IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 04-cv-02225-REB-BNB

JUDY ANN BAT,

Plaintiff,

v.

A.G. EDWARDS & SONS, INC.,

Defendant.
_____

**ORDER**
_____

This matter is before me on the **Plaintiff's Motion to Compel Re: First Set of Written**

**Discovery** (the "Motion to Compel"), filed August 16, 2005.  The Motion to Compel is DENIED

in its entirety.

**Interrogatory No. 1** states:

> Attached as Exhibit A is a compilation of documents with
> handwriting on each numbered page.  Identify whose handwriting is
> on each page (if there is more than one person's handwriting on any
> page, identify with specificity who wrote what on each page), and
> unless the handwriting is plainly legible, identify what the
> handwriting states or says.

The defendant responded, objecting to the request insofar as some of the documents

lacked Bates numbers, but responding by identifying the handwriting on 34 pages.  The defendant

did not, however, "identify what the handwriting states or says."  The plaintiff complains that the

response is inadequate because it "did not identify the substance of the handwriting, a great deal

of which is not legible."  Motion to Compel, at p.3.

I have not been provided with a copy of the "compilation of documents" which was attached as Exhibit A to the discovery request and which is the subject of Interrogatory No. 1. Accordingly, I cannot say which documents, if any, contain handwriting which is not "plainly legible." Local rule of practice 37.1, D.C.COLO.LCivR, requires that discovery motions "shall set forth verbatim the interrogatory, request, and response to which the motion is directed." By not including the documents which composed Exhibit A, the plaintiff has failed to comply with this requirement.

In addition, local rule of practice 7.1A imposes the following requirement:

> The court will not consider any motion, other than a motion under Fed. R. Civ. P. 12 or 56, unless counsel for the moving party or a *pro se* party, before filing the motion, has conferred or made reasonable, good-faith efforts to confer with opposing counsel or a *pro se* party to resolve the disputed matter. The moving party shall state in the motion, or in a certificate attached to the motion, the specific efforts to comply with this rule.

I previously have held, in <u>Hoelzel v. First Select Corp.</u>, 214 F.R.D. 634 (D. Colo. 2003), that the duty to confer imposed by Rule 7.1A "serves a particularly important function in connection with discovery disputes because the parties, through negotiation, frequently are able to narrow the discovery requests in a way which eliminates the need for judicial intervention." <u>Id</u>. at 635. To satisfy the requirements of Rule 7.1A, the parties must confer, preferably through face-to-face meetings, and must compare views and attempt to reach an agreement, including by compromise if appropriate. <u>Id</u>. at 636.

In this case, the plaintiff's certificate of compliance with Rule 7.1A states:

> Ms. Bat immediately notified defense counsel of the deficiencies in each of these objections and answers to the interrogatories, document requests and requests for admission. In response defense

2

counsel provided limited information in a few areas, but refused to rectify the problems set forth above, and proceeded to oddly argue that undersigned somehow failed to confer with her.  To the contrary, AGE has taken the same seriously flawed positions throughout discovery in this matter, such that no amount of arguing would persuade defense counsel otherwise.

With respect to Interrogatory No. 1, the plaintiff's attempt to confer prior to filing the Motion to Compel is limited to the general statement that the defendant "failed to have the persons who wrote these documents identify any of the illegible handwriting."  Defendant's Response to Plaintiff's Motion to Compel (the "Response"), Exh.A at p.1. There is no indication that the plaintiff brought to the attention of the defendant the specific handwritten sections she could not read and requested that defendant provide an interpretation.  That is the kind of conference Rule 7.1A requires, and it did not occur here.

The plaintiff's attempt to confer is limited to a single demand letter.  The substance of the letter includes, for example, with respect to Admission Request No. 11: "Nonesense.  Your objections are utterly frivolous."  Response, Exh.A at p.6.  Obviously, this is not an attempt to confer in good faith.

The letter concludes with the following ultimatum:

> While we would prefer to not engage in constant motions practice arising from you and your client's failure to comply with the most fundamental requirements of discovery, it would seem that will be necessary.  Again, if we do not obtain you and your client's compliance on these deficiencies by close of business Wednesday [the next day] we will file a motion to compel requesting that severe sanctions be imposed by the Court against you and your client.  Please advise which route you and your client intend to take.

Id.

The defendant's counsel responded immediately, stating:

> I have received your letter of today's date concerning discovery
> issues.  As you know, we have a deposition in this case scheduled
> for tomorrow.  Accordingly, I will not be able to respond to your
> letter by the close of business tomorrow.  If you wish to discuss the
> issues concerning the discovery responses, I have time on Thursday
> afternoon when we can have a telephone conference on these
> matters.

Id. at Exh. B.

There is no evidence of any response to this offer to confer other than an e-mail sent the

Saturday before the Motion to Compel was filed, stating that "[o]n Monday we are filing the

motion to compel as to your objections and your clients' [sic] answers, or lack thereof, as to Ms.

Bat's first set."

The plaintiff has flagrantly violated the requirements of Rule 7.1A.  The Motion to

Compel is DENIED with respect to Interrogatory No. 1.

**Interrogatory No. 2** asks the defendant to "[i]dentify all facts and documents you contend

support" its affirmative defenses.  The defendant responded:

> A.G. Edwards objects to this interrogatory because it contains ten
> discrete subparts seeking information about ten discrete subjects
> and, thus, will exceed the allowable rules of interrogatories.  A.G.
> Edwards further objects to the request on the grounds that it seeks
> legal conclusions and work product.  Subject to these objections,
> A.G. Edwards states that all of the discovery produced and future
> investigation will support its defenses or, if not, A.G. Edwards will
> dismiss such defenses prior to trial.

Interrogatory No. 2 is overbroad and unduly burdensome on its face.  I adopt the

reasoning of the court in Hilt v. SFC, Inc., 170 F.R.D. 182 (D. Kan. 1997), which addressed the

impropriety of interrogatories seeking "each and every fact supporting" certain allegations:

4

[Such interrogatories] represent a type of excess which . . . has become too common in recent months. The interrogatories ask not merely for material or principal facts. They seek "each and every fact" supporting the allegations of plaintiff, no matter how insignificant or minor.

*   *   *

Whatever may be said for the virtues of discovery and the liberality of the federal rules, which perhaps all courts recognize, there comes at some point a reasonable limit against indiscriminately hurling interrogatories at every conceivable detail and fact which may relate to a case. . . .  Indiscriminate use of blockbuster interrogatories, such as these, do not comport with the just, speedy, and inexpensive determination of the action.  To require answers for them would more likely cause delay and unreasonable expense of time, energy, and perhaps money.

The nature of the federal discovery rules themselves suggests they are intended to facilitate reasonable discovery, not unduly burdensome, but selected by each party to fit the needs of the particular case.  The discovery rules provide no absolute, unharnessed right to find out every conceivable, relevant fact that opposing litigants know. . . .  This requires counsel in any given case to exercise professional judgment and determine the priorities of discovery.

Id. at pp.186-87.

The Motion to Compel is DENIED with respect to Interrogatory No. 2.

**Interrogatory No. 4** states:

If you contend that AGE investigated any of Ms. Bat's allegations or complaints of gender discriminatory conduct or of retaliation identify everyone who conducted or participated in such investigation(s), all steps taken during such alleged investigation(s), everyone who was interviewed for such alleged investigation(s), and all documents created in the course of such alleged investigation(s).

The defendant answered the interrogatory as follows:

Mr. Hoenninger investigated allegations made to him by plaintiff in 2003.  A.G. Edwards has previously produced the documents

reflecting his investigation.  A.G. Edwards also investigated plaintiff's Charge of Discrimination.  The results of that investigation are set forth in A.G. Edwards Position Statement and related nonprivileged documents submitted to the EEOC.

The plaintiff argues that the response is inadequate because:

AGE merely stated that an HR executive investigated the allegations, referred to unidentified documents, and refused to even generally describe the investigations(s), such as even who was interviewed.

Motion to Compel, at ¶4.

The interrogatory response indicates that all non-privileged documents concerning the investigations have been produced.  There is no allegation that this is not correct.  There is no indication that the plaintiff cannot reasonably determine which of the documents produced concern the investigation.  There is no indication that the plaintiff inquired of the defendant what documents were being referred to and that the defendant refused to identify them with greater particularity.  There is no indication that the identity of the people interviewed cannot be obtained through a review of the documents evidencing the investigation or the deposition of Mr. Hoenninger.  I find that the response to Interrogatory No. 4 is adequate, and that the plaintiff's objection to the response is disingenuous.

The Motion to Compel is DENIED with respect to Interrogatory No. 4.

**Interrogatory No. 5** asks the defendant to identify "the alleged factual bases for each factual position taken by AGE in the 'Position Statement for A.G. Edwards & Sons, Inc.' dated March 19, 2004. . . ."  The defendant objected to the interrogatory, but responded that "the factual bases are what are set forth in the Position Statement."  The plaintiff fails to provide any argument as to why the answer is insufficient.

6

This is another example of an improper blockbuster interrogatory, as were disapproved in Hilt, 170 F.R.D. at 187. In addition, "interrogatories should not require the answering party to provide a narrative account of its case." Hiskett v. Wal-Mart Stores, Inc., 180 F.R.D. 403, 404 (D. Kan. 1998).

The question is equivalent to asking an eye witness to a traffic accident to explain the factual basis for his statement that the traffic signal was red. In general, no further explanation is necessary or appropriate. If there is a particular factual assertion which requires explanation, a party may properly make a specific inquiry as to its basis, if any further basis exists.

To generally require a party to explain its factual assertions is nothing more than make-work. The Motion to Compel is DENIED with respect to Interrogatory No. 5.

**Interrogatory No. 6** asks:

> If you contend that the factual assertions and positions taken by AGE in the second paragraph of the Position Statement are true, identify all facts and documents you claim support your contention.

The defendant objected to the interrogatory as vague, ambiguous, overbroad, and unduly burdensome. I agree. This interrogatory is improper for the same reasons Interrogatory No. 5 is improper.

The Motion to Compel is DENIED with respect to Interrogatory No. 6.

**Interrogatory No. 7** requests the following:

> Identify all documents reflecting or memorializing any and all studies, analyses or other methodologies used by AGE from 1998 through the present to determine whether females are underrepresented in any position or level of the company at AGE in the Western Region.

The defendant refused to answer, asserting the following objections:

> A.G. Edwards objects to this interrogatory on the grounds that it is overly broad in time and scope, unduly burdensome, seeks irrelevant documents, is not reasonably calculated to lead to the discovery of admissible evidence, and does not define the term "underrepresented."  Plaintiff asserts a single claim of retaliation; documents related to gender issues are not relevant.

The plaintiff claims that the requested information is relevant and necessary to her case because "Ms. Bat complained of widespread gender-discriminatory practices in this region of AGE's operations, and as a result, was terminated.  As such she is entitled to information and documents which tend to support the fact that her complaints were subjectively and objectively made in good faith."  Motion to Compel, at ¶7.

In a previous order entered in this case on August 22, 2005, I addressed a similar issue in connection with the designation of a Rule 30(b)(6) witness.  As stated there:

> A Title VII plaintiff alleging a retaliatory discharge must make a prima facie showing that (1) she engaged in protected opposition to discrimination or that she participated in a proceeding arising out of discrimination; (2) she was the subject of an adverse action by her employer subsequent to the protected activity; and (3) there is a causal connection between her activities and the adverse action.  Robbins v. Jefferson County School Dist. R-1, 186 F.3d 1253, 1258 (10th Cir. 1999), *abrogated on other grounds by* Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002); Archuleta v. Colorado Dept. of Institutions, 936 F.2d 483, 486 (10th Cir. 1991). Title VII extends protection to those who informally voice complaints to their superiors or who use their employer's internal grievance procedures.  Id.

> To prevail on a claim of retaliation, the plaintiff need not prove the validity of the complaint or grievance she alleges as the basis for the retaliation.  As the Tenth Circuit Court of Appeals explained in Zinn v. McKune, 143 F.3d 1353 (10th Cir. 1998):

> "Although the complaint that triggers the retaliation need not ultimately be upheld, the plaintiff must have had a reasonable good faith belief that defendant was engaging in discrimination."
>
> Id. at 1362 (internal citation omitted).  Similarly, in Robbins v. Jefferson County School Dist., the circuit court held that "a plaintiff does not have to prove the validity of the grievance she was allegedly punished for lodging; 'opposition activity is protected when it is based on a mistaken good faith belief that Title VII has been violated.'" 186 F.3d at 1258 (quoting Love v. Re/Max of America, Inc., 738 F.2d 383, 385 (10th Cir. 1984).

The plaintiff's complaint does not allege that she complained of wide-spread gender-based discrimination in A.G. Edwards' Western Region.  Her alleged complaints were substantially more narrow.  See Complaint at ¶¶20-21, 23, 25, 35-36, 56, 63, 69, and 73-74.  Consequently, I agree with the defendant that documents concerning "any and all" studies conducted by the defendant from 1998 to the present concerning under-representation of women in A.G. Edwards' Western Region are neither relevant to the matters in dispute in this case nor reasonably calculated to lead to the discovery of admissible evidence.

The Motion to Compel is DENIED with respect to Interrogatory No. 7.

**Interrogatory No. 8** states:

> Identify why in the Position Statement, at page 1, did AGE represent to the EEOC that Ms. Bat ". . . lodges personal attacks that are completely unfounded," and what investigations, if any, were performed by AGE to lead or cause it to state that whatever it refers to as personal attacks were completely unfounded.

The defendant answered the interrogatory as follows:

> A.G. Edwards asserted the referenced statement because it believed it to be true.  Mr. Hoenninger investigated plaintiff's personal attacks as reflected in the documents produced.

The plaintiff complains that the answer is inadequate because it "refers to unidentified documents, and refuses to identify what were the 'personal attacks,' how it determined they were unfounded, and any information about its investigation that allegedly concluded the unidentified attacks were unfounded." Motion to Compel, at ¶8.

The interrogatory is poorly framed. Apparently the plaintiff wanted to know the specifics of the allegedly unfounded personal attacks referred to in the Position Statement. She did not ask for that information. Defendant has answered the interrogatory as posed. In any event, the defendant's reference to documents indicates that the details of the investigation are contained in those documents. Although it would have been a better practice for the defendant to specify the documents containing the information, the purpose of Rule 7.1A is to require the parties to work informally to resolve misunderstandings of this type. As discussed above, the plaintiff failed meaningfully to comply the requirements of Rule 7.1A.

The Motion to Compel is DENIED with respect to Interrogatory No. 8.

**Interrogatory No. 9** asks the defendant to "[i]dentify each and every fact and document which AGE claims supports AGE's contention that the decision to terminate Ms. Bat was non-retaliatory." The defendant answered the interrogatory by stating that "[a]ll facts and documents in this case demonstrate that AGE did not take any retaliatory action toward plaintiff. AGE terminated plaintiff's employment for unsuitable performance."

Interrogatory No. 9 is an improper blockbuster interrogatory which is overbroad and unduly burdensome on its face. Hilt, 170 F.R.D. at 186-87. It also is improper because it seeks to require the defendant to provide a narrative account of its case. Hiskett, 180 F.R.D. at 404.

10

Even though the interrogatory is improper and no response was required, the defendant fully answered it.

The Motion to Compel is DENIED with respect to Interrogatory No. 9.

**Interrogatory No. 10** requested that the defendant:

> Identify all policies, procedures and practices concerning AGE's placing employees on "probation," so-called "Action Plans" or grounds and procedures for termination of AGE employees.

The defendant asserted objections but answered the interrogatory, stating:

> A.G. Edwards states that it has no written policy that applies in all situations. Employees are at will and if they do not meet performance expectations, their employment can be terminated. With respect to unsuitable performance, generally, each department has performance expectations and will counsel employees to assist in meeting those expectations, in some cases with written plans.

The plaintiff complains that the answer is inadequate, arguing:

> It is incomprehensible that AGE does not have anything in writing concerning its procedures, policies or practices surrounding these personnel actions. Such information is important for Ms. Bat, since if AGE failed to follow its own policies or procedures in what it actually or allegedly did to Ms. Bat this is evidence of retaliation and pretext, going to the core of this matter.

Motion to Compel, at ¶11.

The interrogatory requires the defendant to identify "all policies" of the defendant concerning probation and action plans. The defendant responded that it has no written policy "that applies in all situations." It is not clear from the answer whether separate departments or regions have their own written policies, or whether there are no written policies at all. The briefing sheds no light on the issue. This, again, is a matter which could have been developed and (probably) resolved had the plaintiff engaged in a meaningful consultation as required by Rule

7.1A and the <u>Hoelzel</u> decision.  Nor would the plaintiff be entitled to "all policies" under the facts

of this case.  A proper request would be limited to those policies which applied to the plaintiff

during the time of her employment.

Rule 7.1A is absolute in its prohibition against considering the merits of any motion until

the parties have conferred in good faith to resolve the disputed matter.  I have found that the

plaintiff failed to meet the requirements of Rule 7.1A.

The Motion to Compel is DENIED with respect to Interrogatory No. 10.

**Interrogatory No. 12** states:

> If it is your contention that the decision to state on the U5 form that
> Ms. Bat was terminated for unsuitable performance has not or will
> not affect Ms. Bat's ability to locate employment with major
> brokerage firms, identify all reasons and facts you claim support
> your contention.

The defendant made the following response:

> A.G. Edwards objects to this interrogatory on the grounds that it
> lacks sufficient facts to respond at this time.  Depending on jobs
> sought, plaintiff may be able to perform satisfactorily in a future
> position.  Subject to this objection, A.G. Edwards states that it is
> obligated to provide truthful responses on form U-5, which it did
> with respect to plaintiff; her discharge resulted from unsuitable
> performance.  In addition, the U-4 form required disclosures for
> registration or transfer of license do not require that terminations
> for unsuitable performance not related to security violation be
> disclosed.

The objection--that the defendant lacks sufficient information--is proper.  The

interrogatory does not seek facts, but instead requires the defendant to predict the future and then

state the facts upon which it bases its prediction.

12

The answer also makes clear that the defendant is making no contention--either that the plaintiff's termination will or will not affect her ability to locate employment with major brokerage firms.

The Motion to Compel is DENIED with respect to Interrogatory No. 12.

**Interrogatory No. 13** required the defendant to "[i]dentify and describe all communications between the following persons, or between any of them, which in any way concerned Ms. Bat: (a) Mark Tulley; (b) Paul Coffee; (c) Norman Timmins; and (d) Ronald Hoenninger."

The defendant objected to the interrogatory as overbroad and unduly burdensome. Notwithstanding its objections, the defendant produced documents evidencing written communications relating to the plaintiff's job performance and made the identified witnesses available for depositions to testify about oral communications.

This is another example of an improper blockbuster interrogatory. <u>Hilt</u>, 170 F.R.D. at 187. It is unreasonable to require a company to identify and describe "all communications" among four employees about a co-employee, apparently unlimited in time.

I also agree with the defendant that the oral communications between the employees sought by this interrogatory are more reasonably obtained through depositions and not by an interrogatory. As the court stated in <u>Hilt</u>:

> The rules [of civil procedure] provide for a variety of discovery procedures to fit the various ways in which information can best be obtained. In many instances depositions, rather than interrogatories, will better serve the purpose of obtaining detailed facts.

170 F.R.D. at 187.

The Motion to Compel is DENIED with respect to Interrogatory No. 13.

**Interrogatory No. 15** asked for "any and all reasons AGE did not allow Ms. Bat to resign her employment rather than be terminated." The defendant objected to the interrogatory, stating: "A.G. Edwards objects to this interrogatory on the grounds that it assumes plaintiff offered to resign."

In the Motion to Compel, the plaintiff argues that "AGE typically allows its management and professional level employees who have actual performance issues to resign in lieu of being terminated." Motion to Compel, at ¶15. There is no evidence supporting this assertion, however. Nor is there any evidence that the plaintiff offered to or was willing to resign.

I agree with the defendant that Interrogatory No. 15 springs from a fact not in evidence--that the plaintiff offered to or was willing to resign rather than be terminated--and its objection was proper. Consequently, the Motion to Compel is DENIED with respect to Interrogatory No. 15.

**Interrogatory No. 16** requested the following information:

> Identify all male employees in the Western Region who from 2000 through the present required leave time, adjusted schedules or other accommodations due to serious personal issues, problems or illness, and identify in detail how AGE accommodated each one of these males.

The defendant objected to the request:

> A.G. Edwards objects to this interrogatory on the grounds that it is vague and ambiguous as to the meaning of the terms "leave time," and "adjusted schedules," and "other accommodations," and "serious personal issues, problems or illness," overly broad, unduly burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence as it requests information regarding "all male employees." A.G. Edwards further objects to

14

> this request on the grounds that plaintiff does not assert a gender
> discrimination claim and the comparison of male versus female is
> irrelevant and not reasonably calculated to lead to the discovery of
> admissible evidence.

The plaintiff does allege that she was placed on an action plan based on inadequate

performance at a time when she was experiencing extremely difficult personal issues in her life,

and that male employees dealing with similar personal problems were given far more latitude than

was the plaintiff. Complaint, at ¶¶23-25, 35-36, and 56. Consequently, I do not agree that the

information requested is not relevant to the plaintiff's claim. The allegations of the Complaint

indicate that the plaintiff is aware of specific instances where men employees were treated

differently than was the plaintiff. For example, paragraph 23 of the Complaint alleges that the

plaintiff experienced her brother's suicide and a failing marriage, and paragraph 24 alleges that

"[w]hen men went through similar problems, AGE and Coffee went to great lengths to

accommodate their needs." Paragraph 36 of the Complaint alleges that the plaintiff sent a

memorandum to Mr. Timmins which, among other things, "pointed out that her male counterparts

were given far more latitude when they were dealing with personal problems." Paragraph 56 of

the Complaint alleges that the plaintiff wrote to Mr. Tulley complaining that the defendant had

discriminated against her by failing to accommodate her needs resulting from the "suicide death of

her brother, domestic violence, criminal proceedings against her husband, and the dissolution of

her marriage," despite its "history of accommodating male employees who had personal

problems."

Although the interrogatory might have been properly framed had it asked for specific

information about specific male employees alleged to have been treated differently under

hardships similar to those experienced by the plaintiff, or the interrogatory might have been narrowed in the course of a meaningful Rule 7.1A conference, it is improperly overbroad and unduly burdensome in its current form.

The Motion to Compel is DENIED with respect to Interrogatory No. 16.

**Interrogatory No. 17** states:

> If you are contending that with regard to any male employee in the Western Region from 2000 through the present that you placed any male employee on probation or on Action Plans or terminated any male employee during any period of time when any male employee required leave time, adjusted schedules or other accommodations due to serious personal issues, problems or illness, identify each such male employee and all documents you claim support your contention.

Interrogatory No. 17 is objectionable for the same reasons as is Interrogatory No. 16, and the Motion to Compel is DENIED with respect it.

**Interrogatory No. 18** requests:

> Identify each male employee in the Western Region who was involuntarily separated by AGE from 2000 through the present, and identify for each such employee what AGE indicated on each of their U5s concerning the reasons for separation from employment.

The defendant objected:

> A.G. Edwards objects to this interrogatory on the grounds that it is overly broad in time and scope, unduly burdensome, seeks irrelevant documents, and is not reasonably calculated to lead to the discovery of admissible evidence. A.G. Edwards further objects to this request on the grounds that plaintiff does not assert a gender discrimination claim and this comparison of male versus female is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

16

The Complaint has a single allegation concerning gender-based distinctions in connection with the basis for terminations reported by the defendant on U-5 forms.  Specifically, at paragraph 90, the plaintiff alleges, "on information and belief," that the defendant "found ways to avoid such condemning statements for male employees who it fired, but not for Ms. Bat. . . ."

The defendant's objection to the interrogatory as overbroad "in time and scope" is proper. It should be limited to male employees subject to the U-5 reporting requirements, and it should be limited in time to a period reasonably related to the time of the plaintiff's termination in July 2003. These limitations could easily have been accomplished if the plaintiff had meaningfully complied with the requirements of Rule 7.1A.  She did not.

The Motion to Compel is DENIED with respect to Interrogatory No. 18.

**Interrogatory No. 19** required the defendant to "[i]dentify the authors and everyone who provided input as to the content of each written communication from AGE to Ms. Bat from June 2002 through June 2003, specifying in detail who authored and provided input in each such communication."

The defendant objected to the request as overbroad and unduly burdensome, but then responded that "the documents generally reflect an author and in response to Interrogatory No. 1 above, A.G. Edwards has identified the handwriting on various documents as requested."

In her Motion to Compel, the plaintiff argues without evidentiary support that:

> Timmins, Ms. Bat's direct report, admitted to Ms. Bat that he did not author substantial documentation critical of Ms. Bat's performance, such as the Action Plans and Ms. Bat's final performance review, though these documents purported to be authored by him.  It is also clear that Tulley and Hoenninger were drafting and contributing to the content of these Action Plans,

performance reviews and emails to Ms. Bat in response to her complaints and concerns.

Asking the identity of every person who provided input into "each written communication from AGE to Ms. Bat" spanning one year's time is another example of an improper blockbuster interrogatory indiscriminately seeking information about every conceivable detail.  It reflects discovery written without the exercise of any professional judgment or prioritization.  If the plaintiff had narrowed her request to information about the documents whose authorship is important, such as the action plans, final performance review, and e-mails sent to Ms. Bat in response to her complaints, a response would have been required.  The plaintiff's blockbuster request is improper and the defendant's objections were appropriate.

The Motion to Compel is DENIED with respect to Interrogatory No. 19.

**Requests for Production of Documents:**    The plaintiff served 20 requests for production of documents on the defendant.  She now moves to compel with respect to 18 of the 20 production requests.

With respect to five of the production requests--Nos. 5, 6, 7, 11, and 16--the defendant has stated that the responsive documents have been or will be produced.  Any misunderstanding about whether the documents have been produced; or which documents the defendant contends are responsive to a particular request; or when and where additional documents will be produced should have been worked out in a conference pursuant to Rule 7.1A.  The plaintiff failed to comply with the requirements of that rule.  Consequently, the Motion to Compel is DENIED with respect to Requests for Production Nos. 5, 6, 7, 11, and 16.

Five of the production requests--Nos. 3, 4, 18, 19, and 20--are blockbuster requests which are overbroad and unduly burdensome on their face.  For example, Request for Production No. 3 commands the production of "all of AGE's document retention, destruction and fabrication policies from 2000 through the present."  The request is relevant, if at all, only in connection with the collateral issue of whether the defendant "fabricated documents it provided to the EEOC in support of its alleged defenses. . . ."  Motion to Compel at p.10.  The request appears to seek irrelevant information.  Even if it were determined to be relevant, only the policies of the defendant (if any exist) concerning the fabrication of documents at the time of the EEOC response would be appropriate.

Similarly, Request for Production No. 4 requests the following:

> If AGE provided any training or education to its employees concerning the requirements of the Sarbanes-Oxley Act since its passage, produce all such training and education materials.

The plaintiff argues that the request is relevant because "it appears that Timmins, Tulley, Hoenninger and AGE's in-counsel [sic] violated the part of this statute criminalizing the fabrication of documents provided to investigating federal agencies. . . ."  Motion to Compel, at p.10.  The request is not reasonably tailored to seek the information that the plaintiff really would need--e.g., the training provided to Timmins, Tulley, Hoenninger, and the particular in-house counsel allegedly involved on fabrication of documents.

Request for Production No. 18 seeks "all emails concerning Ms. Bat"; Request No. 19 requests "all Action Plans for all AGE employees in the Western Region for 2002 and 2003"; and Production Request No. 20 calls for the production of "all drafts and other versions of each written communication from AGE to Ms. Bat or concerning Ms. Bat in 2002 and 2003."  A party

is entitled to reasonable, relevant discovery.  The indiscriminate use of blockbuster production requests, such as these, calling for all possible information impose undue burden, cost, and delay, and are objectionable.  Hilt, 170 F.R.D. at 186-87.

The Motion to Compel is DENIED with respect to Requests for Production Nos. 3, 4, 18, 19, and 20.

The remaining production requests at issue--Nos. 2, 8, 10, 12, 13, 14, 15, and 17--were objected to for various reasons.  In some instances less than all requested documents were produced; in other instances, the defendant refused to produce any documents at all.  I do not know whether some or all of these problems could have been resolved by the lawyers absent court intervention because the plaintiff failed meaningfully to meet and confer about the problems.  Rule 7.1A requires such an effort.

The Motion to Compel is DENIED with respect to Requests for Production No. 2, 8, 10, 12, 13, 14, 15, and 17, based on the plaintiff's failure to comply with Rule 7.1A.

**Requests for Admissions:**     The plaintiff moves to compel with respect to nine of the 13 requests for admissions served.  In four instances--Admission Requests Nos. 2, 3, 4, and 7--the defendant either admitted or denied the requests.  As to them, the Motion to Compel is DENIED.

With respect to the other five requests at issue--Nos. 6, 9, 10, 11, and 12--the defendant objected to the requests for various reasons, most often because certain terms in the request were not adequately defined.  Whether the objections could have been resolved through a conference is unknown because the plaintiff failed to comply with the requirements of Rule 7.1A.  The Motion to Compel is therefore DENIED as to Requests No. 6, 9, 10, 11, and 12.

Rule 37(a)(4), Fed. R. Civ. P., provides that if a motion to compel is denied a court may, "after affording an opportunity to be heard, require the moving party or the attorney filing the motion or both of them to pay to the party . . . who opposed the motion the reasonable expenses in opposing the motion, including attorney's fees. . . ."  I will consider awarding the defendant its costs and attorney's fees in opposing the Motion to Compel if it files a motion seeking such an award, supported by an appropriate affidavit and detailed, contemporaneous time records.

Dated November 18, 2005.

BY THE COURT:

/s/ Boyd N. Boland
United States Magistrate Judge